# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 04 CR 0372 |
| ) | |
| v. ) | Honorable Charles R. Norgle |
| ) | |
| ) | |
| MICHAEL A. VALLONE, et. al. ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is Defendant Hopper's Objections to the Sufficiency of the Government's Notice and Summary of and Bases for Expert Opinions as Required by Fed. R. Crim. P. 16(a)(1)(G) ("Objections") and Renewal of Motion for Sanctions ("Motion"). Defendants Michael A. Vallone and Edward B. Bartoli (collectively, "Defendants") joined in the Objections. For the following reasons, the Court holds that Defendants' Objections are overruled, and thus the Motion is denied.

## I. BACKGROUND

Defendants Michael A. Vallone, Edward B. Bartoli, Robert W. Hopper, Timothy Shawn Dunn, William S. Cover, Michael T. Dowd, David E. Parker and John C. Stambulis are charged with conspiracy to defraud the United States and to commit tax fraud (18 U.S.C. § 371), mail and wire fraud (18 U.S.C. §§ 1341, 1343) and multiple income tax offenses (26 U.S.C. §§ 7201, 7206(1) and (2)). Additionally, a forfeiture allegation charges that several of the above-listed defendants should forfeit more than $4 million and specific items of real and personal property. The Government alleges in its indictment that the defendants conspired to promote and sell domestic and foreign trusts to taxpayers through a company called Aegis Management

Company, to which each of the defendants, in some capacity, had an affiliation. The Government alleges that they did so with the purpose and effect of defrauding the United States by concealing trust purchasers' assets and income from the Internal Revenue Service and to illegally reduce or eliminate their tax liability. Defendants David E. Parker and John C. Stambulis have pled guilty to the alleged charges. The case is currently set for trial on February 26, 2008 for the remaining Defendants.

On February 8, 2008 the Government formally submitted to Defendants its Rule 16(a)(1)(G) notice ("Notice") of its intention to call as witnesses IRS Agents Paul Ponzo ("Agent Ponzo") and Michael Welch ("Agent Welch") during its case-in-chief at trial. See Def.'s Objections, Ex. A. In its Notice, the Government set forth a lengthy summary of each agent's testimony and supplied the Defendants with a resume for each agent.

For Agent Ponzo, the Government explained that he would testify to, among other things, the tax reporting and filing requirements for individuals over the age of 65. He would further testify to his review of specific checks executed for the benefit of the Defendants, paid from bank accounts that the Defendants controlled, and to various summary exhibits that detail the checks made payable to the Defendants for the years 1994 to 2002. See Ex. A at 1. Furthermore, the Government disclosed that Agent Ponzo would testify regarding tax computations for the Defendants based on certain summary schedules, which list the checks benefitting the Defendants. Id. Finally, the Government disclosed several specific sections of the Internal Revenue Code for which Agent Ponzo would provide testimony. Id.

As to Agent Welch, who has testified as a summary, fact and expert witness on the Government's behalf in similar cases, the Government revealed that he would testify to, among other things, the tax reporting and filing requirements for individuals over the age of 65, to his

2

review of specific checks made payable to the Defendants, and to certain summary exhibits that detail the checks made payable to the Defendants for the years 1994 to 2002. See Ex. A at 2. The Government further disclosed that Agent Welch would testify to tax computations and to several specific sections of the Internal Revenue Code. Id. The Government further divulged that Agent Welch would testify to the overall tax loss resulting from the conspiracy, to the voluminous documents used to calculate the tax loss, to the summary schedules that detail the tax loss computations for several Aegis clients, and to his specific methodology in computing the overall tax loss. Id. at 2-3.

The Defendants object to the Government's notice on one distinct ground – that it does not comply with the disclosure requirements of FED. R. CRIM. P. 16(a)(1)(G). Specifically, Defendants assert that "the notice is significantly deficient in that it fails to state a summary of the testimony [and] the opinions to be offered and [to] provide bases and reasons for any opinions." See Def.'s Objections at 2, ¶ 4. Accordingly, Defendants request that the Court sanction the Government for its purported failure to meet its disclosure requirements.

## II. DISCUSSION

### A. Standard of Decision

While the government has no obligation to disclose its non-expert witnesses before trial, Rule 16 requires the Government to make certain pretrial disclosures regarding its expert witnesses. See United States v. W.R. Grace, 493 F.3d 1119, 1131 (9th Cir. 2007) (noting that "Rule 16 establishes a different regime for expert witnesses"). Upon a defendant's request, the government is required to disclose the expert witnesses it intends to use in its case-in-chief at trial, as well as a summary of the experts' expected testimony. FED. R. CRIM. P. 16(a)(1)(G). The summary must describe the witness's opinions, the bases and reasons for those opinions, and

the witness's qualifications. Id.; United States v. Yoon, 128 F.3d 515, 526 (7th Cir. 1997); United States v. Batts, 171 Fed. Appx. 977, 982 (4th Cir. 2006). The advisory committee notes to Rule 16 further explain that the "summary of the bases relied upon by the expert...should cover not only written and oral reports, tests, reports, and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703." FED. R. CRIM. P. 16 advisory committee's note, 1993 Amendment.

To regulate these disclosures, the Court recognizes that it has wide latitude in ensuring the parties' compliance with the discovery obligations that Rule 16 prescribes. See FED. R. CRIM. P. 16(d)(1). Indeed, such discretion permits the Court to consider the reasons why the disclosure was insufficient, the extent of the prejudice, if any, to the requesting party and any other relevant circumstances. See id.; see also W.R. Grace, 493 F.3d at 1131 (explaining the deference that Rule 16(d)(2) gives to district courts); Cf. FED. R. CRIM. P. 16 advisory committee's notes, 1966 Amendment to subdivision (g) (noting the district court's "wide discretion" in dealing with a party's failure to comply with a discovery order). And, where a failure in disclosure occurs, Rule 16 provides for a number of sanctions the Court may impose.

## B. The Government Satisfied Its Burden Under FED. R. CRIM. P. 16(a)(1)(G)

Here, upon close review of the Government's Notice, it is clear that the Government satisfied its obligations under Rule 16(a)(1)(G). As to the identity and qualifications of the Government's proposed expert witnesses, the Government not only disclosed the identity of its experts, but it also attached detailed curriculum vitae for each one, describing the Agents' education, work experience and previous trial testimony. This is more than enough to put the Defendants on notice of the Agents' identity and to provide them with a meaningful opportunity to prepare for cross-examination on any issues involving the Agents' qualifications. Thus, the

only viable issue before the Court is whether the Government satisfied its obligation to provide a summary of the proposed expert testimony and the bases and reasons for any opinions the expert may offer. The Court not only finds that it did, but finds that the Government went above and beyond its Rule 16 obligations to disclose information about its experts to the Defendants.

First, the Defendants do not dispute that the Government turned over to them the summary schedules, tax computations, exhibits, checks and tax related documents to which the Government's proposed witnesses would testify. Second, the Defendants concede that the Government's Notice listed in detail the topics to which the Government's proposed witnesses would testify, including any testimony involving the disclosed documents. Third, the Government in its Notice told the Defendants exactly what Agent Welch's testimony would be -- that the overall tax loss resulted "from the conspiracy as charged in Count 1 of the superseding indictment." Fourth, aside from revealing Agent Welch's testimony, the Government specifically set forth the methodology Agent Welch used to compute the overall tax loss. This alone is enough to satisfy Rule 16. See Yoon, 128 F.3d at 526-27 (finding that the "government more than fulfilled its obligation" when it tendered copies of all checks and summary charts, revealed the expert's methodology and disclosed the expert agent's testimony). But, in this instance, the Government disclosed even more.

Approximately one week prior to issuing its Notice, the Government allowed Defendants, as they concede in their Objections, to "hear Agent Welch describe how he developed the tax loss summaries." Def.'s Objections at 3, ¶ 5. Moreover, at the same meeting Agent Welch provided to Defendants "documents as examples of how the calculations listed on the summary were determined." Id. In essence, the Government gave the Defendants an opportunity prior to trial, a dry run as it were, to hear for themselves the legitimate bases for Agent Welch's

5

testimony, as well as any statements and opinions that Agent Welch was likely to convey on the stand. This sort of disclosure is more than what is expected of the Government to minimize surprise, reduce the need for continuances and to provide Defendants a fair opportunity to test the merit of the expert's testimony. See FED. R. CRIM. P. 16 advisory committee's notes, 1993 Amendment; see also Batts, 171 Fed. Appx. at 982 (finding no prejudice where the defense had an opportunity to question the government's expert witness prior to trial, and had access to the information elicited). In this light, the Court finds that the Government satisfied its burden under Rule 16.

## C. The Government's Proffered Witnesses Satisfy Fed. R. Evid. 702, 703 and Daubert and Kumho

Looking beyond the Rule 16 disclosure issue, the Court at this time finds it appropriate to consider the sufficiency of the Government's experts and their proposed testimony under Rules 702, 703 and under the standards set forth in Daubert and Kumho.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 as well as Daubert v. Merrell Dow Pharmaceuticals. Naeem v. McKesson Drug Co., 444 F.3d 593, 607 (7th Cir. 2006) (citing Daubert, 509 U.S. 579 (1993)). Expert testimony is admissible if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Kempner Mobile Elecs., Inc. v. Sw. Bell Mobile Sys., 428 F.3d 706, 712 (7th Cir. 2005) (citing FED. R. EVID. 702). An expert's testimony may take the form of an opinion if it serves to inform the trier of fact about affairs not within the full understanding of the average individual. United States v. Windfelder, 790 F.3d 576, 580 (7th Cir. 1986). And, an expert's opinion is not inadmissible simply because it addresses an ultimate issue to be decided by the trier of fact. Id. The district court, essentially, is a "gate-keeper" who

determines whether proffered testimony is reliable and relevant before accepting a witness as an expert. Autotech Tech. Ltd. P'ship v. Automationdirect.com, 471 F.3d 745, 749 (7th Cir. 2006).

Under Rule 703, an expert may base his or her opinion or inference on observations of facts or data presented before trial or on facts or data presented at trial (e.g. by hypothetical questions). FED. R. EVID. 703; see Dura Auto. Sys. of Ind., Inc. v. CTS Corp., 285 F.3d 609, 613 (7th Cir. 2002). Such facts or data presented to the expert need not be admitted or even admissible in evidence, so long as those facts or data are of the type reasonably relied upon by experts in the particular field. FED. R. EVID. 703.

This case involves several complex and intricate issues on federal income taxation. As such, and as set forth above, the Government disclosed to the Defendants two IRS Agents who are likely to provide either summary or expert testimony regarding, among other things, various payments made by check to the Defendants and the summary exhibits that detail the checks paid to the Defendants for the years 1994 to 2002. Notwithstanding this testimony, one of the Government's proposed experts, Agent Welch, will take it one step further. Agent Welch, as he has done in previous cases, will testify to, among other things, the computations and methodologies used to:

> "Identify the amount of diverted income appearing on the various clients' Asset Management Companies' trust tax returns, establish the deductions on the returns that were allowed, remove from the diverted income any income that was previously reported on the clients' personal tax return, and then apply a multiplier of 28% to reach a conservative calculation of the tax loss amount."

Ex. A. at 3. The Government asserts that this testimony will connect the overall tax loss to the conspiracy and its alleged actors. With this in mind, the Court must determine whether such testimony will assist the trier of fact in understanding the evidence or determining the facts at issue. The Court determines that it does.

7

In light of the Court's gate-keeping functions, which apply to testimony based on scientific, technical and other specialized knowledge, and includes testimony in a case involving issues of federal taxation, the Court finds that the Government has made a sufficient showing of the reliability of the testimony the two, well-experienced Agents will provide. According to the Government's Notice, the Agents are well-trained, experienced, educated in the area of expertise and have testified in numerous other cases that involve complex, closely-related issues. There is no question that the proposed testimony is well within the province of the Agents' experience and expertise. And, given the complexity of the issues involved here, the Agents' expertise will certainly assist the trier of fact in understanding and in weighing the evidence and issues involved in this case. See U.S. v. Beal, 970 F.2d 343, 347-48 (7th Cir. 1992) (allowing IRS Agent to give summary testimony regarding documentary evidence, employment and tax consequences of the Defendant's conduct); Windfelder, 790 F.3d at 581 ("Expert testimony by an IRS agent which expresses an opinion as to the proper tax consequences of a transaction is admissible evidence."); see also United States v. Jones, 958 F.2d 520, 521 (2nd Cir. 1992) (allowing an IRS witness to testify regarding an IRS transcript that summarized the defendant's transactions); United States v. Harenberg, 732 F.2d 1507, 1513 (10th Cir. 1984) (allowing summary testimony in a complex tax case "because tax cases often require the presentation of substantial and complex documentation and the technical analyses of these materials by tax experts.").

The Court should point out that according to his curriculum vitae, Agent Ponzo has testified on two occasions, one of which involved summary testimony regarding filing requirements, earned income credit requirements, the electronic filing process and computed tax. He has worked as a Revenue Agent, in various capacities since 1986. Agent Welch has testified

as both a summary and expert witness in twelve cases during a span of ten years. Those cases involved, for the most part, charges of tax conspiracy, tax evasion, false claims and false returns. Agent Welch has served as a Revenue Agent, in various capacities, for over twenty years. Given the Agents' training and experience, they clearly possess a special knowledge that is neither available to the ordinary witness, nor within the full understanding of the average person. See United States v. Majors, 196 F.3d 1206, 1215-16 (7th Cir. 1999) (allowing opinion testimony of FBI agent on analysis of financial records where the agent worked as an FBI financial analyst for eight years and had performed financial analysis in numerous cases). Moreover, no matter how we characterize Agent Welch's testimony – summary or expert – the Court finds his testimony admissible "given the assistance such an individual can provide to the jury" in this complex matter. United States v. Pree, 408 F.3d 855, 869 (7th Cir. 2005) (examining the testimony of the same Agent Welch). The Pree case is particularly instructive.

> "[W]here an IRS Revenue Agent summarizes the tax consequences, the line between summary testimony and expert testimony is indistinct. Given the assistance such an individual can provide to the jury, it has not been unusual in previous cases for an IRS agent to testify as an "expert summary witness."

Pree, 408 F.3d at 869-70. Accordingly, the Court finds that the testimony of Agents Ponzi and Welch, as either expert or summary testimony, as set forth in the Government's Notice, is admissible.

### III. CONCLUSION

For the foregoing reasons, Defendant Hopper's Objections to the Sufficiency of Government Notice of Summary of and Bases for Expert Opinions as Required by Fed. R. Crim. P. 16(a)(1)(G) are overruled, and the Renewal of Motion for Sanctions is denied.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 2/21/08