

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 04 CR 372 |
| ) | |
| MICHAEL A. VALLONE, ) | |
| EDWARD B. BARTOLI, ) | |
| ROBERT W. HOPPER, ) | Hon. Charles R. Norgle |
| TIMOTHY SHAWN DUNN, ) | |
| WILLIAM S. COVER, ) | |
| DAVID E. PARKER, ) | |
| JOHN C. STAMBULIS, and ) | |
| MICHAEL T. DOWD. ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court are the following post-trial motions: Defendants Bartoli and Hopper's joint Motion for Judgment of Acquittal; Defendant Dunn's two Motions for Judgment of Acquittal; Defendant Cover's Motion for Judgment of Acquittal; Defendants Bartoli and Hopper's joint Motion for a New Trial; Defendant Dunn's Motion for New Trial; Defendant Cover's Motion for New Trial; Defendant Dunn's Motion in Arrest of Judgment; and Defendant Vallone's Motion for (1) Reconsideration of the Court's Denial of His Pretrial Motion for Speedy-Trial-Act Relief, and (2) Post-Trial Relief on this Basis. For the following reasons, the Motions are denied.

**I. BACKGROUND**

Six Defendants were indicted on numerous federal tax fraud charges in April 2004, following an undercover investigation by Internal Revenue Service ("IRS") agents into an

1

approximately ten-year long scheme to market and sell sham foreign and domestic trusts through the now defunct Aegis Company, formerly based in Palos Hills, Illinois. The agents' investigation revealed that Defendants were diverting income from businesses into fraudulent trusts for wealthy clients in order to hide millions of dollars in income from the IRS. This scheme resulted in a $60 million tax loss to the United States. IRS agents also discovered that Defendants concealed their own income during the years 1997 to 2000, resulting in a tax loss to the United States of more than $1 million.

The Defendants are: Michael A. Vallone ("Vallone"), executive director and a principal of Aegis; Edward B. Bartoli ("Bartoli"), legal director and a principal of Aegis; Robert W. Hopper ("Hopper"), managing director and a principal of Aegis; Timothy Shawn Dunn ("Dunn"), a promoter and manager of Aegis trusts; William S. Cover ("Cover"), a promoter and manager of Aegis trusts; David E. Parker ("Parker"), legal director of Aegis Management Company; Michael T. Dowd ("Dowd"), a promoter and manager of Aegis trusts; and John C. Stambulis ("Stambulis"), a trust counsel of Aegis.[1]

The indictment alleged as follows. In order to market Aegis' tax shelters, Defendants conducted seminars and distributed promotional materials to prospective clients. After the prospective clients agreed to purchase Aegis' services, Defendants assisted the clients in hiding income in various foreign and domestic trusts. Typically, clients transferred their business, home, and/or other assets into Aegis trusts or bank accounts corresponding to these trusts. Defendants then designated an Aegis representative as the nominal trustee. Almost immediately

---

[1] Two Defendants, Dowd and Stambulis, were named in a superceding indictment on June 24, 2004. Parker and Stambulis pled guilty and testified for the government at trial.

thereafter, the Aegis representative would then resign and appoint the client as trustee, giving the client management and control of the trust assets. Defendants counseled Aegis clients to pass their income through a series of trusts which paid little or no taxes. Defendants also assisted their clients in claiming false deductions on the trusts' federal tax returns, and in claiming false charitable donations.

Aegis solicited its most wealthy clients to participate in a program marketed as an offshore trust system. This system involved a series of sham transactions in which the clients' income was transferred through various foreign trusts and then returned to the clients through cash withdrawals or by other means. Sometimes, the actual transfer of funds never occurred, but was made to appear to have taken place through a series of trust tax returns. Defendants advised their clients to transfer their untaxed income to bank accounts in the United States, then transfer these funds by wire to offshore accounts in tax haven countries such as Belize and Antigua in the name of trusts secretly controlled by the clients, then transfer the funds again to another offshore bank account in Antigua in the name of a foreign trust or an International Business Company ("IBC") secretly controlled by the clients. Defendants then provided their clients with credit cards linked to the IBC accounts through which the clients could make purchases or receive cash advances. Defendants also counseled the clients to repatriate their untaxed income through purported "loans" or "gifts" from their IBCs.

In addition, Defendants advised their clients on how to prepare personal, business, and trust tax returns that concealed income from the IRS. Defendants also assisted clients in obstructing IRS audits through the use of what Defendants called the "Aegis Audit Arsenal." Clients were instructed to withhold information from IRS agents, to respond to IRS inquiries

with obstructive letters and questionnaires, and to resist IRS summonses by filing meritless motions.

Following an eleven-week trial, on Monday, May 19, 2008, a jury convicted the six Defendants who chose to exercise their right to trial. Vallone, Bartoli, Hopper, and Cover were convicted of all counts as charged. Dunn and Dowd were found not guilty on some counts. Following trial, these six Defendants timely filed a slew of post-trial motions. In this Opinion and Order, the court addresses the following motions: Defendants Bartoli and Hopper's joint Motion for Judgment of Acquittal; Defendant Dunn's two Motions for Judgment of Acquittal; Defendant Cover's Motion for Judgment of Acquittal; Defendants Bartoli and Hopper's joint Motion for a New Trial; Defendant Dunn's Motion for a New Trial; Defendant Cover's Motion for New Trial; Defendant Dunn's Motion in Arrest of Judgment; and Defendant Vallone's Motion for (1) Reconsideration of the Court's Denial of His Pretrial Motion for Speedy-Trial-Act Relief, and (2) Post-Trial Relief on this Basis.

## II. DISCUSSION

### A. Standard of Decision

Pursuant to Federal Rule of Criminal Procedure 29(a), before a case is submitted to the jury, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." After a jury verdict, a defendant may bring a motion for judgment of acquittal pursuant to Rule 29(c)(2). The central inquiry for the court in determining Rule 29 motions is whether the evidence presented at trial was sufficient to convict, although other related grounds for acquittal are commonly presented to courts. See, e.g., Williams v. Virgin Islands, 271 F. Supp. 2d 696 (D.V.I. 2003) (denying Rule 29 motion based on

4

asserted Brady violation); United States v. Safavian, 451 F. Supp. 2d 232 (D.D.C. 2006) (denying Rule 29 motion asserting due process and other violations).

> The firmly established rule is that the court must decide whether at the time of the motion there was relevant evidence from which the jury could reasonably find (defendant) guilty beyond a reasonable doubt. Evidence will be evaluated in the light most favorable to the Government, bearing in mind that it is the exclusive function of the jury to interpret witness credibility.

United States v. Khilchenko, 324 F.3d 917, 921 (7th Cir. 2003) (internal quotation marks and citation omitted); United States v. Payne, 102 F.3d 289, 295 (7th Cir. 1996); United States v. Reed, 875 F.2d 107, 111 (7th Cir. 1989). A court should grant a Rule 29 motion "when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." United States v. Blassingame, 197 F.3d 271, 284 (7th Cir. 1999) (internal quotation marks and citation omitted). The Rule 29 movant therefore "faces a nearly insurmountable hurdle." Id.

Motions brought pursuant to Federal Rule of Criminal Procedure 33 should be granted "if the interest of justice so requires." FED. R. CRIM. P. 33(a). Rule 33 motions may be brought based on newly discovered evidence or other grounds. Id. at 33(b). "If the complete record, testimonial and physical, leaves a strong doubt as to the defendant's guilt, even though not so strong a doubt as to require a judgment of acquittal, the district judge may be obliged to grant a new trial." United States v. Morales, 910 F.2d 467, 467 (7th Cir. 1990). Motions to grant a new trial, regardless of the assertions made therein, "are disfavored, and properly granted only in the most extreme cases." See Jenkins, 218 F.R.D. at 613.

A defendant may move the court to arrest judgment, pursuant to Federal Rule of Criminal Procedure 34. That Rule provides, in part, "[T]he court must arrest judgment if: (1) the

indictment or information does not charge an offense; or (2) the court does not have jurisdiction of the charged offense." See United States v. Genao, 361 F. Supp. 2d 224, 228 (S.D.N.Y. 2005); United States v. Vlahos, 884 F. Supp. 261, 265-66 (N.D. Ill. 1995).

## B. Defendants' Post-Trial Motions

### 1. Motions for Acquittal

Bartoli and Hopper have filed a joint Motion for Acquittal. Dunn and Cover have filed separate Motions for Acquittal. Vallone and Dowd have joined in these Motions.

#### *a. Bartoli and Hopper*

In Bartoli and Hopper's joint Motion for Judgment of Acquittal, they assert a violation of the Speedy Trial Act, that the evidence was insufficient to convict, and that various other flaws in either the indictment or the trial require acquittal.

##### *i. Speedy Trial Act*

The Speedy Trial Act of 1974 ("the Act") prescribes a time frame for federal criminal trials. 18 U.S.C. § 3161, et seq. The Act establishes a thirty day maximum between arrest and the filing of an information or indictment charging an offense, and sets a minimum of thirty days and a maximum of seventy days between indictment, or the first appearance of counsel, and trial. Id., at §§ 3161(b) and (c)(1)-(2). "[T]he Act recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases. To provide the necessary flexibility, the Act includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start." Zedner v. United States, 547 U.S. 489, 497 (2006) (citing 18 U.S.C. § 3161(h)). A case must be dismissed if no indictment or information is filed within the time frame specified by § 3161(b) and there is no excludable delay. 18 U.S.C. § 3162 (a)(1). If

the defendant is not brought to trial within the time frame specified by § 3161(c)(1), and there is no excludable delay, the case must be dismissed on the defendant's motion. 18 U.S.C. § 3162(a)(2); Zedner, 547 U.S. at 499. However, a defendant who does not move for dismissal prior to trial has waived his or her right to dismissal under the Act. 18 U.S.C. § 3162(a)(2); Zedner, 547 U.S. at 503.

The government initially asserts that the only Defendant to make a pretrial motion to dismiss pursuant to the Act is Vallone, and that all other Defendants in this case have thus waived their right to assert a violation of the Act. Defendants argue, however, that Bartoli and Dowd joined in this Motion, and that Defendants generally were treated as having joined all pretrial motions unless they specifically indicated otherwise. With an abundance of caution, the court declines the government's invitation to find that all Defendants except Vallone have waived their right to present speedy trial issues. The court therefore addresses Defendants' assertions under the Act on their merits.

Defense counsel in this case filed numerous motions to continue the trial, asserting, *inter alia*, that given the large amount of discovery material, which totaled over a million pages of documents, they needed more time to prepare. See, e.g., docs. [189], [218], [232], [241], and [271]. In addition, defense counsel requested, and was granted, a court order approving a $280,000 payment to the Syngence company to process the huge amount of documents in this case and to provide a searchable, web-based system to allow counsel to access the "massive size of the discovery database." Doc. [216], at 2. Given the complexity of this case, the court was therefore well within its discretion to grant counsels' requests to continue the trial. See 18 U.S.C. § 3161(h)(8)(B)(ii) (providing that a court may consider "[w]hether the case is so unusual

or complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section," in determining whether to grant a continuance.). In addition, during the time period that Vallone complained of in his pretrial Motion, February 7, 2007 to May 3, 2007, numerous defense motions remained pending before the court. The court granted continuances from February 2, 2007 to October 23, 2007 based on Defendants' representations regarding the complexity of the case and the length of time needed to prepare for trial. Initially, counsel indicated that the trial might take six months. The court advised counsel to read and consider the dissent in United States v. Ryan, 506 F.3d 517, 523 (7th Cir. 2007) ("[T]he longer the trial, the less likely the jury is to be able to render an intelligent verdict. Jurors become overwhelmed by the volume of the evidence and numbed by its repetitiousness.").

Moreover, it is significant that the Defendants in this case were joined for trial, and no Defendant had been severed. Under the Act, "the excludable delay of one defendant may be ascribed to all codefendants in the same case, absent severance." United States v. Parker, 508 F.3d 434, 438 (7th Cir. 2007) (quoting United States v. Dennis, 737 F.2d 617, 620 (7th Cir. 1984)); 18 U.S.C. § 3161(h)(7) (excluding "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time frame for trial has not run and no motion for severance has been granted."). Given the extraordinary complexity of this case, and the fact that no defendant had been severed, the court denies Defendants' Motion for Acquittal based on the Act.

Although Defendants bring this portion of their Motion for Acquittal under the Act's statutory framework, the court finds that Defendants would have fared no better had they raised the speedy trial issue on Constitutional grounds. The Sixth Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . .". The Supreme Court has identified four factors courts should consider in determining whether a delay in trial was unconstitutionally lengthy: "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Barker v. Wingo, 407 U.S. 514, 530 (1972); see also Doggett v. United States, 505 U.S. 647, 651 (1992).

The Doggett court explained that courts are to use the first Barker factor as a threshold inquiry – postaccusation delays of over one year are generally thought "unreasonable enough to trigger the Barker inquiry." Doggett, 505 U.S. at 652 n1. In this case, the first prong of the Barker inquiry is satisfied. Defendants were indicted in April and June 2004, and went to trial in February 2008. The court will therefore examine the remainder of the Barker factors.

The court originally set this case for trial on June 29, 2004. However, the court granted the government's motion to find that this was a Complex Case and for an Entry of an Order Excluding Time under the Speedy Trial Act on May 14, 2004, and struck that trial date. On April 12, 2005, the court set a trial date of February 1, 2006. In November 2005, however, Defendants moved the court to continue the trial date, citing voluminous discovery tendered by the government. The court granted Defendant's motion and struck the trial date. The court then set the case for trial on November 1, 2006. On August 19, 2006, Defendants again moved the court to continue the trial, asserting that the services of Syngence were required to help process the data contained in well over one million pages of discovery documents. The court granted

9

Defendants' motion, and continued the trial to February 7, 2007. The court also granted a defense motion to authorize the services of a paralegal. In December 2006, Defendants again moved the court to continue the trial, and the court set the case for trial on October 23, 2007. In August 2007, Dowd moved the court to again continue the trial. The court granted the motion, and set the case for trial on January 15, 2008. On December 4, 2007, Dunn filed another motion to continue the trial, which the court denied. On December 14, 2007, the court continued the trial until February 19, 2008, so that Bartoli could undergo a mental competency examination. Trial began on February 26, 2008. Given the complex nature of this case and the incredible amount of discovery materials, the repeated requests for continuances by Defendants were understandable. However, it is clear from the record that the vast majority of the delays in bringing this case to trial are attributable to Defendants. See Barker, 407 U.S. at 530.

As to the third Barker factor, the court has already noted that Vallone filed a motion under the Act, which other Defendants joined. However, given the number of requests for continuances filed by Defendants, the court cannot find that this Barker factor is in Defendants' favor. See United States v. Oriedo, 498 F.3d 593, 600 (7th Cir. 2007) ("simultaneous assertion of the right [to a speedy trial] and requests for delay makes any demand 'entitled to little, if any, weight.'") (quoting United States v. Taylor, 196 F.3d 854, 862 (7thCir. 1999)).

In examining the fourth Barker factor, prejudice to Defendants, the court must consider whether Defendants were subject to "oppressive pretrial incarceration," and whether the defense was actually impaired by the delays. United States v. White, 443 F.3d 582, 591 (7th Cir. 2006). In this case, no Defendants were subject to pretrial incarceration, and the record makes it clear that if the court had not granted Defendants the delays they requested, defense counsel would

have been significantly disadvantaged. Rather than being impaired by pretrial delays, the delays enabled defense counsel to mount a competent defense on behalf of their clients. Taking all the Barker factors into account, the court therefore determines that Defendants' constitutional right to a speedy trial was not violated in this case.[2]

### ii. *Insufficiency of the Evidence*

Bartoli and Hopper next argue that the government presented insufficient evidence to convict. In support of this argument, they assert that the area of tax law under which they were prosecuted is unsettled, and that there was no evidence presented that their actions were unlawful. These arguments are meritless, and borderline frivolous.

There is no question whatsoever that the abusive use of trusts to conceal income from the IRS is unlawful, and subjects individuals who engage in this sort of behavior to judgments of tax deficiency, tax penalties, and, where the income concealed is significant, to potential criminal liability. See United States v. Patridge, 507 F.3d 1092 (7th Cir. 2007) (affirming defendant's convictions for tax evasion, money laundering, and wire fraud after he transferred income to offshore trusts in Antigua and Belize in order to avoid paying income taxes); Muhich v. Commissioner of Internal Revenue, 238 F.3d 860, 864 (7th Cir. 2001) (appellant's "transfer of the title of assets to a trust while retaining their use and enjoyment is a sham transaction that will not be recognized for tax purposes.") (quoting Neely v United States, 775 F.2d 1092, 1094 (9th Cir. 1985)). At trial, the government presented overwhelming evidence that the tax shelters marketed by Aegis were unlawful shams designed to "make life hard for the revenooers" by

---

[2] For the reasons articulated in this section, Defendant Vallone's Motion for (1) Reconsideration of the Court's Denial of His Pretrial Motion for Speedy-Trial-Act Relief, and (2) Post-Trial Relief on this Basis is denied

11

transferring clients' income to both domestic and offshore trusts, so that the clients could pretend they had no income. See Patridge, 507 F.3d at 1092.

### iii. Other Alleged Flaws in the Indictment or Trial

As to any alleged flaws in the indictment or trial, the assertions made by Defendants are either meritless, borderline frivolous, or irrelevant. Count I alleged a single count of conspiracy to commit more than one crime. It is well-settled that such an allegation is permissible. Braverman v. United States, 317 U.S. 49, 54 (1942). The government presented overwhelming evidence that Defendants counseled Aegis' clients to file false income tax returns. Defendants' assertion that there was no evidence to show that the Aegis system was unlawful is untenable, as the court has explained above. Defendants' assertions that Bartoli's son might have been a trustee of one or more trusts at issue in this case, and that no evidence shows that Hopper and Bartoli were directly involved in preparing the false tax returns filed by Aegis clients, are irrelevant.

### b. Dunn and Cover

These Defendants have filed three separate motions for judgment of acquittal. These motions raise many of the same issues addressed in Bartoli and Hopper's motion. In addition, none of these motions adequately develops the assertions contained therein with caselaw or other authority. Accordingly, these assertions are waived. See United States v. Jones, 224 F.3d 621, 626 (7th Cir. 2000) ("The lack of development of this argument and absence of supporting case law speaks to the paucity of the argument. Arguments that are not adequately developed or supported are waived, ergo we do not consider [them].") (internal citation and quotation marks omitted).

### 2. Motions for New Trial

Bartoli and Hopper have filed a joint Motion for New Trial. Dunn and Cover have filed separate Motions for New Trial. Vallone and Dowd have joined in these Motions.

#### a. *Bartoli and Hopper*

Bartoli and Hopper raise numerous issues in this Motion, none of which have merit. Their first assertion is that the court erred in granting the government's motion in limine barring the defense from presenting evidence that the Aegis system was a lawful means of avoiding taxes. Defendants raise no new arguments, and, as the court has already explained, the law is clear and well-settled that the use of sham trust arrangements to hide income from the IRS is unlawful. See Patridge, 507 F.3d at 1092; Muhich, 238 F.3d at 860. Defendants next assert that the court erred in granting the government's motion in limine allowing a summary of the alleged tax loss caused by Defendants' activities. Defendants again offer no new arguments, and the court has no reason to alter its determination that the admission of this summary was proper under Federal Rule of Evidence 1006. Next, Bartoli asserts that the court erred in determining that he was competent to stand trial. The court allowed Bartoli to be examined by two experts, and held numerous hearings on this matter. The court will therefore not revisit this issue. The court also declines Defendants' invitation to reconsider whether the jury instructions were proper.

Defendants also argue that an "accumulation of errors" denied them a fair trial. Defendants draw the court's attention to United States v. Santos, 201 F.3d 953 (7th Cir. 2000) in support of this assertion. None of Defendants' arguments, however, have merit. The court will not revisit its decision to deny Bartoli's motion to quash the search warrants and suppress

evidence. Defendants' assertion that the government's disclosure was overly broad is unfounded, as the court approved $280,000 in litigation support services to pay Syngence to process the voluminous discovery data, and to create a searchable, web-based system that would allow defense counsel easy access to whatever documents they needed. Defendants' assertion that Co-Defendant Dunn improperly referred to Bartoli's disbarment by the ARDC is equally unavailing. The government asserts that it does not recall these incidents, and Defendants have not provided the court with a transcript of these alleged statements. The issue was discussed outside the presence of the jury, and the court ruled in favor of the government on the issue. These incidents simply do not rise to the level of impropriety that would require a new trial. See Jenkins, 218 F.R.D. at 613.

The court's questioning of witness David Jenkins, who was granted immunity and called by the government in its case-in-chief, also does not reach this level of impropriety. Nor do the court's decisions about the order in which certain evidence was presented. The court has inherent authority, as well as authority under Federal Rules of Evidence 611 and 614, to ask questions of witnesses and to control the presentation of testimony and other evidence. The court also gave an instruction to the jury on this issue. Defendants' assertions that co-conspirator statements admitted by the court are hearsay are simply groundless. See F.R.E. 801(d)(2)(E) (statements made by co-conspirators in furtherance of and during the course of the conspiracy are not hearsay). Finally, despite Defendants' assertions, there was no violation of the attorney-client privilege at trial. See United States v. Evans, 113 F.3d 1457, 1462 (7th Cir. 1997) (the introduction of documents that contain no information intended to be confidential does not

violate the attorney-client privilege); United States v. Al-Shahin, 474 F.3d 941, 946 (7th Cir. 2007) (explaining the crime/fraud exception to the attorney-client privilege).

### b. *Dunn and Cover*

These Defendants have filed separate Motions for New Trial. These Motions raise many of the same issues addressed in Bartoli and Hopper's joint Motion. In addition, like their Motions for Acquittal, their Motions for New Trial are undeveloped and unsupported by caselaw or other authority. Accordingly, the assertions contained within these Motions are waived. See Jones, 224 F.3d at 626.

### 3. Dunn's Motion in Arrest of Judgment

This Motion is frivolous. Dunn first asserts that the indictment and the superceding indictment did not charge an offense, and that the federal district court does not have jurisdiction over violations of federal statutory criminal law. These assertions require no comment from the court. Dunn also asserts that venue is not proper in the Northern District of Illinois. It is clear from the record, however, that Aegis had its headquarters in the Northern District of Illinois, and that Dunn's corporate and individual tax returns were prepared in the Northern District of Illinois. The court therefore has no reason to change its ruling on venue.

### III. CONCLUSION

For the foregoing reasons, the court denies Defendants Bartoli and Hopper's joint Motion for Judgment of Acquittal; Defendant Dunn's two Motions for Judgment of Acquittal; Defendant Cover's Motion for Judgment of Acquittal; Defendants Bartoli and Hopper's joint Motion for a New Trial; Defendant Dunn's Motion for a New Trial; Defendant Cover's Motion for New Trial; Defendant Dunn's Motion in Arrest of Judgment; and Defendant Vallone's Motion for (1)

Reconsideration of the Court's Denial of His Pretrial Motion for Speedy-Trial-Act Relief, and (2) Post-Trial Relief on this Basis.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

Dated: August 11, 2008